## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION (CINCINNATI)

| | | |
|---|---|---|
| **YOU CHENG LEE** | : | Case No. 1:26-cv-00074-JPH |
| | : | |
| Plaintiff, | : | Judge Jeffery P. Hopkins |
| | : | |
| v. | : | **DEFENDANTS' FED. R. CIV. P. 12(B)(6)** |
| | : | **MOTION TO DISMISS FOR FAILURE** |
| **EASTERN VILLAGE INC., et al.** | : | **TO RAISE COMPULSORY** |
| | : | **COUNTERCLAIM UNDER OHIO CIV.** |
| Defendants. | : | **R. 13(A) OR, IN THE ALTERNATIVE,** |
| | : | **TO DISMISS WITHOUT PREJUDICE** |
| | : | **FOR REFILING IN THE COURT OF** |
| | : | **COMMON PLEAS OF MONTGOMERY** |
| | : | **COUNTY, OHIO OR, IN THE** |
| | : | **ALTERNATIVE, TO STAY PENDING** |
| | : | **ARBITRATION** |

Defendants move to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) based on Plaintiff's failure to raise his claims as compulsory counterclaims in currently pending state court litigation, as required by Ohio Civ. R. 13(A). In the alternative, Defendants move to dismiss the case without prejudice so that Plaintiff may refile his case in the Court of Common Pleas of Montgomery County, Ohio and litigate his claims with related claims currently pending in that court. At a minimum, Defendants seek to stay this case pending arbitration/litigation of Plaintiff's claims pending in the Court of Common Pleas of Montgomery County, Ohio. The grounds for this Motion are set forth in the Memorandum attached below. This Motion is made without waiving any other defenses that may be available to Defendants under Fed. R. Civ. P. 12 or any other applicable affirmative defenses.

Respectfully submitted,

*s/Abigail K. White*

Abigail K. White (0082355)
AUMAN, MAHAN & FURRY
110 North Main Street, Suite 1000
Dayton, Ohio 45402
Ph: (937) 223-6003/Fax: (937) 223-8550
Email: akw@amfdayton.com
*Attorney for Defendants*

## MEMORANDUM

## I.    STATEMENT OF FACTS AND PROCEDURAL HISTORY.

This case arises out of Plaintiff You Cheng Lee's ("Lee") employment with Defendant Eastern Village, Inc. ("Eastern Village") from 2022 until July 31, 2025.  (Doc. #10, Amended Complaint, ¶ 11; Ex. 1, Eastern Village Complaint[1], ¶ 11).  Eastern Village is an Ohio Corporation and is in the business of operating restaurants in Southwest Ohio, including "China Cottage," one of the leading Chinese restaurants in the region.   (Ex. 1, Eastern Village Complaint, ¶ 1).

In 2018, Lee, a citizen of Taiwan, entered the United States under an F-1 student visa. (Ex. 1, Eastern Village Complaint, ¶ 5).  On or about 2019, Eastern Village sponsored Lee for an EB-3 employment-based permanent residency, based upon his employment with Eastern Village. *Id.*  In or about 2022, Lee's EB-3 application was approved, and Lee has remained in the United States as a lawful permanent resident.  (Ex. 1, Eastern Village Complaint, ¶ 6).

---

[1] In a Fed. R. Civ. P. 12(b)(6) motion to dismiss, this Court may consider "'exhibits attached to the complaint, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss' without converting the motion to dismiss into a motion for summary judgment," so long as the Court is not asked to "weigh the evidence or evaluate the credibility of witnesses." *Thomas v. Noder-Love*, 621 Fed.Appx. 825, 828 (6th Cir. 2015) (quoting *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) and *Cameron v. Seitz*, 38 F.3d 264, 270 (6th Cir. 1994)).  Eastern Village's Verified Complaint and its attachments are matters of public record and are contained within the case docket for Mont. Co. Case No. 2026 CV 00097.

2

Following his EB-3 approval, Lee began his employment with Eastern Village, and he signed an Employment Contract with HOYA Foods (a dba of Eastern Village). (Ex. 1, Eastern Village Complaint, ¶ 7). A true and accurate copy of such Employment Contract is attached hereto as Exhibit A to Eastern Village's Complaint (Ex. 1, Eastern Village Complaint) and fully incorporated herein ("Employment Contract").

While Lee was employed by Eastern Village, he was offered—and accepted—the opportunity to become an owner of a new China Cottage establishment located in Huber Heights, Ohio. Lee asserts that on or around 2023, he began to perform physical labor for the new restaurant, on a "routine" basis, in addition to other duties. (Doc. #10, Amended Complaint, ¶¶ 16-20). On or about February 1, 2025, Lee executed a Shareholders' Agreement for ZhaoGe Inc. (a.k.a ZhouGe Inc.), dba China Cottage, which was to operate the new restaurant location in Huber Heights. (Ex. 2, Shareholders' Agreement).[2] Pursuant to the Shareholders' Agreement, Lee was a 16.4% owner of ZhouGe Inc. and agreed to actively contribute to the success of the company through operational involvement. (Ex. 2, Shareholders' Agreement, ¶ 1; pg. 8). Specifically, pursuant to paragraph 2.1, Lee agreed to—among other things—"[w]ork a minimum of 40 hours per week in roles that contribute directly to the Company's operations (e.g., management, marketing, oversight, or other designated responsibilities) or in any related businesses operated by the franchisor under the same umbrella or concept." *Id.* at ¶ 2.1. During this time, Lee remained employed by Eastern Village and was paid by Eastern Village. (Doc. #10, Amended Complaint, ¶ 11).

---

[2] References to "Shareholders' Agreement" are to the Shareholders' Agreement of ZhouGe Inc., a copy of which is attached as Exhibit A-1 to Third Party Defendant Wen H. Wang's Motion to Stay Proceedings filed February 5, 2026 in the state litigation. A copy of such Motion is attached hereto as Exhibit 2.

On or about May 21, 2025 (while Lee was still employed by Eastern Village and subject to the Employment Agreement) he incorporated and set up Zhao Cai, LLC, a competing restaurant in Oxford, Ohio.  (Ex. 1, Eastern Village Complaint, ¶ 13).  Lee registered the tradename "Chop Bento" for his LLC on June 18, 2025.  *Id.*  During his employment with Eastern Village, and in contemplation of starting a competing business, Lee removed Eastern Village's confidential recipes and SOPs by storing them on his personal computer and/or transferring them to a cloud-based account, and thereafter utilized the misappropriated information by using such recipes and SOPs in his own competing restaurant.   (Ex. 1, Eastern Village Complaint, ¶ 17).  On July 31, 2025, Lee stopped working for Eastern Village.[3] (Ex. 1, Eastern Village Complaint, ¶ 11).  Chop Bento opened its doors in October 2025.

On January 7, 2026, Eastern Village filed suit in the Court of Common Pleas of Montgomery County, Ohio, seeking damages and injunctive relief based on Lee's misappropriation of Eastern Village's trade secrets and breach of contract.  (Ex. 1, Eastern Village Complaint).  This case was assigned Case No. 2026 CV 00097 ("the state litigation").  On January 26, 2026, Lee filed a "Third-Party Complaint," asserting claims of unjust enrichment and conversion against Wen H. Wang ("Tiger Wang") and against ZhouGe Inc. (Ex. 3, Lee's Third-Party Complaint).  Within the Third-Party Complaint for unjust enrichment and conversion (Ex. 3, Lee's Third-Party Complaint), Lee raised essentially the same allegations that he has now raised again in his Amended Complaint for alleged Federal and State wage and hour violations (collectively, the "overtime claims") against Eastern Village, Tiger Wang, and Lin Wan-Jen ("Queena Wang").  (Doc. #10, Amended Complaint).  In both cases, Lee alleges that he was nothing more than a cook and a laborer, and that he exercised no actual ownership or managerial

---

[3] Lee's employment was formally terminated as of August 31, 2025.

authority in ZhouGe, Inc. (Doc. #10, Amended Complaint, ¶¶ 13-25; Ex. 3, Lee's Third-Party Complaint, ¶¶ 6-17).

## II.  <u>ARGUMENT</u>.

### A.  <u>Lee's Claims Must Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6) Because They Were Compulsory Counterclaims in the State Litigation and He Did Not Raise Them, Such That They Are Now Barred by Ohio Civ. R. 13(A)</u>.

Because Lee's overtime claims arose out of the same transaction or occurrence as the claims pending in the state litigation, they were compulsory counterclaims under Ohio Civ. R. 13(A) that were waived when Lee failed to raise them in the state litigation.  As such, his overtime claims are barred and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### 1.  <u>Pursuant to Ohio Civ. R. 13(A), compulsory counterclaims must be brought in the first action arising out of the same transaction or occurrence, or they are waived and are barred from subsequent litigation</u>.

This Court has previously applied Fed. R. Civ. P. 12(b)(6) to dismiss claims that were compulsory counterclaims in a state court action pursuant to Ohio Civ. R. 13(A), and were barred from litigation in Federal court because they were not raised in the state action.  See *Stanley v. Citimortgage, Inc.*, 2018 U.S. Dist. LEXIS 9929, 2018 WL 502718 (S.D.Ohio Jan. 22, 2018) (Granting defendants' Civ. R. 12(b)(6) motion to dismiss Plaintiff's claims due to Plaintiff's failure to raise them as compulsory counterclaims in related state court litigation) and  *HID Global Corp. v. Leighton*, 2007 U.S. Dist. LEXIS 84549, * 6 (N.D.Ohio Nov. 15, 2007), citing *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995), (Denying defendant's motion to dismiss but finding that the "appropriate vehicle for challenging a claim that should have been brought as a compulsory counterclaim does seem to be a motion pursuant to Rule 12(b)(6).").

Ohio Civ. R. 13(A) states, in relevant part, "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it

arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."  The Supreme Court of Ohio has interpreted this rule to require that "[all existing claims between opposing parties that arise out of the same transaction or occurrence must be litigated in a single lawsuit pursuant to Civ. R. 13(A), no matter which party initiates the action." *Rettig Enterprises, Inc. v. Koehler*, 68 Ohio St.3d 274 (1994), paragraph one of the syllabus.  A party's failure to raise a compulsory counterclaim in an earlier action results in the claim being waived, and therefore barred from subsequent litigation.  *Id.* ¶ 277.  In determining what constitutes "the same transaction or occurrence," *Rettig* explained that "'transaction' is a word of flexible meaning.  It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship. * * * That they are not precisely identical, or that the counterclaim embraces additional allegations * * * does not matter." *Id.* at 278.

When determining whether claims arise out of the same transaction or occurrence, courts should utilize the "logical relation" test, which provides that "a compulsory counterclaim is one which is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts * * *." *Id.* at paragraph two of the syllabus.

"The operation of Rule 13(A) does not depend on previously asserted counterclaims being fully adjudicated on their merits." *McConnell v. Applied Performance Techs., Inc.*,  2002 U.S. Dist. LEXIS 27599 (S.D.Ohio Dec. 11, 2022) at ¶ 28.  Civ. R. 13(A) "simply requires that all claims existing at the time the pleading is filed, and arising out of the same transaction or occurrence, be included in the first action or be forever barred.  In other words, while application

of Rule 13(A) has a *res judicata* effect, a party need not necessarily satisfy the four traditional

elements of the common law doctrine of *res judicata* before the compulsory counterclaim rule can

be applied to bar litigation of a subsequently asserted claim." *Id.*

Eastern Village acknowledges that Federal Courts have declined to enforce a state

compulsory counterclaim rule against federal litigants outside the claim preclusion context, while

the relevant state litigation is still pending. *Quality Assocs. v. P&G Distrib. LLC*, 949 F.3d 283

(6th Cir. 2020); *TowerCo 2013, LLC v. Berlin Twp.*, 2023 U.S. Dist. LEXIS 145974 (S.D.Ohio

Aug. 18, 2023); *Oppenheimer v. City of Madeira*, 2021 U.S. Dist. LEXIS 59174 (S.D.Ohio

Mar. 29, 2021). However, in *Quality Assocs.* and subsequent Federal cases declining to dismiss a

compulsory counterclaim under Ohio Civ. R. 13(A), the only claims pursued in Federal court were

based in Federal law. [4] For example, in *Quality Assocs.*, the claim in Federal court was a stand-

alone §1981 claim. *Quality Assocs.* at 286. In *TowerCo 2013*, the claim in Federal Court alleged

violations of the Telecommunications Act and the Fifth Amendment's Takings Clause. *TowerCo

2013* at *10. In *Oppenheimer*, Plaintiff's Federal court claims were brought pursuant to 42 U.S.C.

§1983 based on an alleged violation of his First Amendment Rights; and pursuant to 28 U.S.C.

§2201. *Oppenheimer* at *2. In contrast, Lee's Federal Court Complaint raises claims under both

Federal *and* state law, namely 29 U.S.C § 201 *and* O.R.C. 4111. (Doc. #10, Amended

Complaint, ¶ 1).

In the context of employment claims, courts have held that federal and state employment

claims are compulsory counterclaims in litigation arising out of employment agreements.

Specifically, claims for alleged wage and hour violations under the FLSA and Ohio Revised Code

---

[4] In *Adam v. Nakhle*, 2023 U.S. Dist. LEXIS 206028 (N.D.Ohio Nov. 17, 2023), Plaintiff did raise Federal and state law claims in Federal Court, but the Court declined to exercise supplemental jurisdiction over Plaintiff's state law claims after it dismissed the federal RICO claim for failure to sufficiently plead this claim.

§4111 have been found to be compulsory counterclaims in state court litigation involving breach of contract claims arising out of employment agreements.

For example, in *McConnell v. Applied Performance Techs., Inc.*, 2002 U.S. Dist. LEXIS 27599 (S.D.Ohio Dec. 11, 2022), defendant Applied Performance Techs., Inc. ("APT") sued plaintiff, a former employee, seeking to recover funds that had been loaned to plaintiff during his employment, along with overpaid compensation paid to plaintiff under an executive compensation plan. *Id.* at *3-4. Plaintiff filed three counterclaims against APT but did not raise any claim related to alleged violation of federal or state laws requiring overtime pay. *Id.* at *4. APT and plaintiff settled the case. *Id.* ¶4-6. Approximately six months later, plaintiff sued APT and its sole owner in federal court, alleging violations of federal and state overtime laws. *Id.* at *6. APT filed a motion for summary judgment, arguing that Plaintiff's overtime claims were compulsory counterclaims that should have been brought in the context of the state court litigation. *Id.* at *9. Because plaintiff failed to assert them, APT argued they were barred by Civ. R. 13(A). *Id.* at *15. The Court agreed that plaintiff's claims were compulsory counterclaims which plaintiff was required to bring, if at all, in the context of the state court litigation. *Id.* at *16.

The Court reasoned that a claim is compulsory under Rule 13(A) if it: "(1) exists at the time of serving the pleading; (2) arises out of the transaction of occurrence that is the subject matter of the opposing claim; and (3) does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." *Id.* There was no dispute that plaintiff's overtime claims existed at the time he filed his answer and counterclaims in the state court action. *Id.* at *16. There was also no dispute regarding the third element, that the court had jurisdiction over all parties. *Id.* at *16-17.

At issue was the second element—whether the overtime claims arose out of the same transaction or occurrence that was the subject matter of APT's claims in state court.  *Id*. at *17. "Ohio courts have held that counterclaims are compulsory if they are 'logically related' to the opposing party's claim, such that separate trials 'would involve a substantial duplication of effort and time.' * * * Counterclaims are deemed to be compulsory if they 'involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties.'" *Id*., quoting *Rettig Enters. v. Koehler*, 68 Ohio St. 3d 274, 278-279.

The Court agreed with APT that plaintiff's overtime claims were logically related to the previous claims litigated in state court, as they were offshoots of the same basic controversy concerning his appropriate rate of compensation.  *Id.* at *20.  Like APT's claims against plaintiff, the overtime claims arose out of plaintiff's employment relationship with APT. *Id.*  Further, and more importantly, many of the same factual determinations would have been relevant for both claims.  *Id.* *21.  In order to determine whether plaintiff was exempt from overtime, the Court would have had to consider factors such as the nature of plaintiff's job duties, his discretionary power, his salary, the manner in which he was paid, and the terms of his compensation agreement. Many of those same facts were relevant to the issues in the state court litigation.  *Id.* To try the overtime claims separately would have subjected the parties and the Court to substantial duplication of time and effort.  *Id*. at *22.  Because plaintiff's overtime claims were compulsory counterclaims, they should have been raised in the context of the state court litigation and were barred from being litigated in federal court.  *Id.  See also*, *Shreves v. M.A. Souders, Inc.,* 2015 U.S. Dist. LEXIS 4355 (S.D.Ohio Jan. 14, 2015), finding that defendants' counterclaims based on plaintiff's misappropriation of defendant's property while in pursuit of his own side business, and

while "on the clock" for defendant, were compulsory counterclaims because they arose from the same transaction or occurrence as plaintiff's FLSA claims. *Id.* at *2, 5-6.

In the specific context of disputes involving restaurant employee-owners, courts have found employees' FLSA claims to be inextricably intertwined with issues of employee ownership. For example, in *Espinoza v. Mex-Am Café, LLC*, 2015 U.S. Dist. LEXIS 122597 (M.D.N.C. Sept. 15, 2015), plaintiffs initially filed an action in federal court against their former employer, Mex-Am (a restaurant) alleging violations of the FLSA. *Id.* at *2. Defendant Mex-Am responded with a counterclaim for conversion, based on plaintiffs' removal of a television and other property from the restaurant without authorization. *Id*. at *5-6. Mex-Am also raised a counterclaim for breach of contract, alleging that plaintiffs operated the restaurant as partners and co-owners, pursuant to an agreement in which each plaintiff held a percentage of ownership in the restaurant, and that after plaintiffs severed ties with the restaurant, they refused to contribute their proportional share to the debts of the restaurant. *Id.* at *6-7. The court found that all claims—the FLSA claims, as well as the breach of contract and conversion claims—hinged on the issue of whether plaintiffs were owners or employees of Mex-Am. *Id.* at *5-7. As such, both of Mex-Am's counterclaims were deemed compulsory counterclaims to plaintiffs' FLSA claims. *Id*. at *6-10.

Similarly, in *Sheng Jian Lin v. Kobe Grill*, 2016 U.S. Dist. LEXIS 108816 (Dist.Conn. Aug. 17, 2016), the court found the restaurant's counterclaims for fraud, tortious interference with business relations, conversion, negligence, breach of contract and civil conspiracy were compulsory counterclaims in plaintiff's FLSA action, as both the plaintiffs' and defendants' claims related to the business operations of the restaurant, including payment and wage practices, business management, ownership and control, and the issue of overtime pay would be determined by whether plaintiffs were employees or owners. *Id*. at 6.

**2.** **Lee's overtime claims were compulsory counterclaims that were waived when not raised in the state litigation, because they involve many of the same factual issues and are offshoots of the same basic controversy related to Lee's employment with Eastern Village.**

There can be no dispute that Lee's overtime claims existed at the time he filed his Answer and Third-Party Complaint in the state litigation. Nor can there be any dispute that this Court has jurisdiction over all parties necessary for adjudication of this matter.

As such, the only remaining question is whether Lee's overtime claims against Eastern Village, Tiger Wang and Queena Wang arise out of the same transaction or occurrence that is the basis of the state litigation. Again, the state litigation consists of Eastern Village's claims against Lee for misappropriation of trade secrets and breach of contract, as well as Lee's claims against ZhouGe Inc. and Tiger Wang for unjust enrichment and conversion. The claims involved in the state litigation, as well as the overtime claims, arise out of Lee's Employment Agreement with Eastern Village and from his status as a Shareholder in ZhouGe Inc. Both cases involve common questions of fact related to the business operations of the restaurant, business management, ownership and control, what type of work Lee did, how much time he spent doing this work, and for which entity.

Eastern Village's claims against Lee are based on Lee's employment contract as well as Lee's access to confidential company information and trade secrets by virtue of his position within the company. The facts in that case will necessarily involve Lee's role and duties while employed with Eastern Village, and the hours of training that imparted the knowledge he then relied on to form his own competing business.

Lee's decision to pursue a Third-Party Complaint for unjust enrichment and conversion in the state litigation—based on his assertion that he was only a cook and a laborer—is an acknowledgement that his overtime claims arose out of the same basic controversy as Eastern

11

Village's claims against Lee.   Within the Third-Party Complaint, Lee raised essentially the same allegations he raised in the instant wage and hour suit.   Specifically, Lee alleges that he was employed by Eastern Village as a cook, that he did not hold a management role in ZhouGe Inc., that he did not participate in corporate governance, and did not have authority over finances, contracts or business strategy.   (Ex. 3, Lee's Third-Party Complaint, ¶ 6).   He alleges that he "continued working long hours as a cook for Eastern Village while also spending substantial time assisting with various aspects of the proposed new restaurant, including physical labor in the renovation of the new restaurant."   (Ex. 3, Lee's Third-Party Complaint, ¶ 10).   Lee alleged that despite his contributions, he never realized any meaningful ownership interest in practice, and that his investment "functioned instead as a means to keep [him] working under unequal terms." (Ex. 3, Lee's Third-Party Complaint, ¶ 21).

Similarly, Lee's Amended Complaint filed in the instant case on February 24, 2026 alleges that he was employed by Eastern Village "primarily as a cook and kitchen laborer and performed non-managerial, manual, and production related tasks." (Doc. #10,  Amended Complaint, ¶¶ 2, 13).  Lee further alleges that Eastern Village directed him to perform physical labor at the property that was acquired for purposes of opening a new restaurant location, with the promise that his continued employment and assistance with the new restaurant "would result in an opportunity to participate in the future business operations of that location." (Doc. #10,  Amended Complaint, ¶ 22).   Just as he alleged in the Third-Party Complaint, Lee alleges that "Defendants did not provide [Lee] with any managerial authority, decision-making authority, or control over business operations, and [Lee] continued to perform non-managerial manual labor under Defendants' supervision earning the same wage." (Doc. #10, Amended Complaint, ¶ 25).

12

At a February 17, 2026 preliminary injunction hearing in the state litigation, Lee was questioned extensively by his own attorney regarding facts that are highly relevant to his FLSA claims.  (Ex. 4, Hearing Transcript).  For example, he was asked by his attorney to identify when he started working for Eastern Village, what his pay rate was, how frequently he was paid, his monthly pay, why his wages were increased in 2023, what his job duties were, whether his position changed, how many hours he worked per day, and whether he supervised anyone.  All of this testimony directly relates to Lee's FLSA claim, but was elicited by Lee's counsel in the state litigation.  Lee's counsel also explained this line of questioning to the court, stating, "Your Honor, I just want to show that he was simply a labor—laborer.  He was not any management."  (Ex. 4, Hearing Transcript, pg. 7:12-14).

Based on Lee's own statements and conduct in the state litigation, it is evident that Lee would agree that his overtime claims are inextricably linked to the issues pending in that case, warranting the conclusion that they were compulsory counterclaims in that litigation.

B.      **Even If This Court Finds That Lee's Wage Claims Were Not Compulsory Counterclaims Such That They Are Not Barred, This Case Should Be Dismissed without Prejudice so that it can be Refiled in State Court and/or Stayed Pending Arbitration.**

If this Court determines that Plaintiff's claims are not compulsory and/or that dismissal under Fed. R. Civ. P. 12(b)(6) is not warranted, Defendant Eastern Village respectfully requests that this matter be dismissed without prejudice so that Plaintiff can refile it in  Montgomery County Common Pleas Court and seek consolidation with the state litigation, Case No. 2026 CV 00097.  At a minimum, this case must be stayed pending litigation/arbitration of the claims raised in Lee's Third-Party Complaint, currently pending in Montgomery County.  (Ex. 3, Lee's Third-Party Complaint).

13

Again, Lee's Third-Party Complaint filed in the state litigation, (Ex. 3, Lee's Third-Party Complaint), raised essentially the same allegations that he has now raised again in his Amended Complaint for alleged violations of state and federal overtime laws.  (Doc. #10, Amended Complaint).  In both cases, Lee alleges that he was nothing more than a cook and a laborer, and that he exercised no actual ownership or managerial authority in ZhouGe Inc.  A key issue in the overtime case is whether the hours Lee claims to have "routinely" worked as a laborer performing construction and related activities from 2023 forward, were in service of his own business venture (ZhouGe Inc.), rather than Eastern Village.  If Lee was truly an owner of ZhouGe Inc., then the hours he worked on the development of that restaurant from 2023 until the time of his termination cannot serve as a basis of an overtime claim against Eastern Village.  The primary issue in Lee's Third-Party Complaint for unjust enrichment involves whether he was a true owner of ZhouGe Inc.  Thus, the resolution of that issue will be a key factor in the overtime case.

Lee's Third-Party Complaint was stayed pending arbitration in the state litigation, based on the state court's determination that Lee's claims arise out of his Shareholder Agreement with ZhouGe Inc., and that the Shareholder Agreement contains a valid arbitration clause. (Ex. 5, Order Granting Stay; Ex. 2, Shareholders' Agreement, p. 5, ¶ 7.2 ("Any disputes arising under this Agreement will be resolved through mediation or arbitration before pursuing litigation.")).

Likewise, in the instant case, Lee alleges his overtime claims are directly tied to the Shareholder Agreement, as follows:

> 24. In or around 2025, Defendants required Plaintiff to sign a <u>shareholder agreement</u> relating to the new restaurant entity and to pay approximately $49,000 while Plaintiff continued to work under Defendants' direction performing manual labor.
>
> 25. Despite Plaintiff's payment and continued labor, Defendants did not provide Plaintiff with any managerial authority, decision-making authority, or control over business operations, and

Plaintiff continued to perform non-managerial manual labor under Defendants' supervision earning the same wage.

26. Plaintiff's performance of renovation and related labor at the Chambersburg Road Property was performed for Defendants' benefit and under Defendants' direction during his employment.

27. Before leaving Defendants' employment, Plaintiff requested that the $49,000 be returned in accordance with the shareholder agreement, but Defendants refused, and Plaintiff continued to lack any managerial authority, ownership control, or decision-making power over business operations.

28. Defendant's requirement that Plaintiff pay approximately $49,000 as a condition of continued employment and work at the Chambersburg Road location constituted an unlawful return of wages to the employer, in violation of 29 C.F.R. §531.35, and operated to reduce Plaintiff's wages below the level required by federal and Ohio wage-and-hour laws.

29. This payment, coerced as a condition of his employment, operated as an illegal kickback of a significant portion of the wages Plaintiff had earned.

(Emphasis added). (Doc. #10, Amended Complaint).

In other words, Lee claims that the hours he worked at the construction of the restaurant owned by ZhouGe Inc. should be counted as hours he worked as a laborer for Eastern Village, based on the allegation that he was not a true owner of ZhouGe Inc. and allegedly exercised no managerial authority in that business venture[5]. He further alleges that payments he made pursuant to the Shareholder Agreement served as an illegal kickback of wages Lee earned at Eastern Village. As such, Lee's overtime claims also arise out of the Shareholder Agreement, and are also subject to the arbitration clause within that Agreement. Therefore, this Court can and should dismiss this case without prejudice so that all claims arising from the Shareholder Agreement can be arbitrated together in state court. This would be appropriate because the state court has concurrent

---

[5] Neither Eastern Village nor Tiger Wang have any ownership in ZhaoGe Inc. (a.k.a ZhouGe Inc.).

jurisdiction over Lee's overtime claims pursuant to 29 U.S.C. §216(b), stating an action to recover overtime wages "may be maintained … in any Federal or State court of competent jurisdiction . . .".  *Id*.  Further, it would prevent inconsistent outcomes that may result from both issues being litigated/arbitrated separately.

Accordingly, if Lee's claims are not dismissed, Eastern Village asks that the Court stay the case pending arbitration/litigation of Lee's Third-Party Complaint in the state litigation[6].

### III.     CONCLUSION.

For the foregoing reasons, Eastern Village respectfully requests that this Court dismiss Plaintiff's claims for his failure to raise them as compulsory counterclaims in the state litigation. In the alternative, if this Court finds that Lee's claims are not compulsory counterclaims such that they are barred, Eastern Village asks this Court to dismiss this case without prejudice so that it can be refiled in the Common Pleas Court of Montgomery County, Ohio and litigated/arbitrated with Lee's Third Party Complaint. At a minimum, Defendant requests a stay of these proceedings pending arbitration/litigation of Lee's Third-Party Complaint.

Respectfully submitted,

*s/Abigail K. White*

Abigail K. White (0082355)
AUMAN, MAHAN & FURRY
110 North Main Street, Suite 1000
Dayton, Ohio 45402
Ph: (937) 223-6003/Fax: (937) 223-8550
Email: akw@amfdayton.com
*Attorney for Defendants*

---

[6] Eastern Village reserves the right to seek arbitration of Plaintiff's overtime claims pursuant to the arbitration clause in the Shareholder Agreement, if this case is not dismissed with prejudice.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was filed electronically this 19th day of March, 2026.  Notice of this filing will be sent by operation of the Court's electronic filing system to counsel of record for all parties as indicated on the electronic filing receipt.  Parties and their counsel may access this filing through the Court's system.

*s/Abigail K. White*
Abigail K. White (0082355)
